UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT G. BRAUD, III, | ) | Case No. 1:06 CV 1059 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA VALLEY CAREER | ) | |
| CENTER, *et al.,* | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Plaintiff Robert G. Braud, III ("Plaintiff") filed this lawsuit against his former employer, Defendants Cuyahoga Valley Career Center and the Cuyahoga Valley Career Center Board of Education, a.k.a. Cuyahoga Valley Joint Vocational School District Board of Education (collectively, "Defendants" or "CVCC"). In Plaintiff's Complaint, he seeks compensatory damages from Defendants for: (1) discriminating against Plaintiff in violation of: (a) the Americans with Disabilities Act ("ADA"), including but not limited to 42 U.S.C. §§ 12101, 12112, and 12112(b)(5)(A)-(B); (b) the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701. *et seq.* ("Rehabilitation Act"); and (c) Ohio Revised Code § 4112.01, *et. seq.*; and (2) retaliating against Plaintiff in violation of: (a) the ADA; (b) the Rehabilitation Act; and (c) Ohio Revised Code § 4112.01, *et. seq.* (Pl.'s Complaint, ECF No. 1.)

Currently pending before the court are Defendants' Motion for Summary Judgment ("Summary Judgment Motion," ECF No. 31) on all claims and Plaintiff's Motion to Compel Certain

Discovery Responses Or, In the Alternative, To Exclude.  ("Motion to Compel," ECF No. 28.)  For the reasons set forth below, Defendants' Summary Judgment Motion is granted and Plaintiff's Motion to Compel is denied as moot.

## I. FACTS AND PROCEDURAL HISTORY

On or about June 22, 2000, Plaintiff was employed by Defendants as a computer-aided drafting teacher. (*See* Pl.'s Compl., ¶ 8; Aff. of Superintendent Roscoe Schlachter ¶ 5 ("Aff. Schlachter"), ECF No. 31-1.) Plaintiff and Defendants subsequently entered into a series of one-year teaching contracts starting from the 2000-2001 school year through the 2004-2005 school year. (*See* Aff. Schlachter ¶ 6; CVCC Teacher Contract, ECF No. 31-2.)

Throughout Plaintiff's tenure as a teacher, he was subject to periodic evaluations.  (Aff. Schlatcher ¶ 7.) On December 4, 2003, Frank Huml ("Huml"), Defendants' assistant principal and Plaintiff's supervisor, performed a routine evaluation of Plaintiff.  (Pl.'s Dep. at 153-54, ECF No. 33-4.) Huml told Plaintiff that he needed to devote considerable attention to planning for and executing classroom instruction, noting that there were far too many tangential conversations and disorganized explanations.  (Huml Dep. at 158-60, ECF No. 36-3.)  Therefore, Huml stated that "considerable attention  need[ed] to be given to planning for and executing instruction[,]" and warned that "contract  recommendation is based on concerns related to instruction delivery." (Teacher Evaluation Summary ("Evaluation Dec. 2003"), ECF No. 31-9.)  Huml provided Plaintiff with a written step-by-step sequence for providing linear, organized instruction in the future.  (*Id.*)

On February 27, 2004, Huml provided Plaintiff with a memorandum memorializing the findings of the December 4, 2003 evaluation, and indicating that he was recommending Plaintiff's

contract renewal with reservations because of Huml's continued concern regarding Plaintiff's instructional planning, delivery techniques, presentation skills, and sequencing of explanations. (Pl.'s Dep., Ex. B-F ("Memorandum"), ECF No. 31-10; Pl's Dep. at 185.)  At this time, Huml told Plaintiff that if Plaintiff did not improve, his contract may not be renewed the following year.  (Huml Dep. at 185.)

Plaintiff states that he told Huml on or about April 9, 2004, that David Feldman, M.D., a Board-certified psychiatrist, diagnosed Plaintiff with Attention Deficit Hyperactivity Disorder ("ADHD").  (Pl.'s Dep. at 60-61, ECF. No. 31-4; Feldman Aff. at 1, ECF No. 36-1.)  It is undisputed that Plaintiff did not tell Defendants he believed his ADHD was a disability and did not request accomodation for his ADHD at this time. (*Id.*)

During the following school year, on November 5, 2004, and January 31, 2005, Huml again evaluated Plaintiff and concluded that Plaintiff was continuing to fail to present his lessons in a linear, organized fashion.  Plaintiff received an evaluation commending Plaintiff's improvements, but nevertheless concluding that Plaintiff still "needs improvement" in classroom instruction. (Pl.'s Dep., Ex. B-H ("Evaluation Nov. 2004"), ECF No. 31-12; Pl.'s Depo., Ex. B-I ("Evaluation Jan. 2005"), ECF No. 31-13.)

On March 11, 2005, Plaintiff discussed both the ADHD diagnosis and potential ongoing performance issues with Principal Rich Rybak ("Rybak").  (Pl.'s Dep. at 101-103;  Rybak Dep. at 48-9, ECF No. 36-4.)  Plaintiff, purportedly citing his deposition, states in his Opposition that he asked Rybak if his contract was being renewed, and that Rybak said he did not know, that it was up to Huml, and that there was no recommendation not  to renew at that time. (Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 5, ECF No. 35, citing Pl.'s Dep. at 234-235. ) Defendants' Reply points

-3-

out, though, that Plaintiff actually stated in his deposition that Rybak told Plaintiff that Rybak did not know if the decision to renew had been made, and that it was up to Huml.  (Reply in Support of Motion for Summary Judgment, ("Defs.' Reply") at 10, citing Pl.'s Dep. at 233-35.)

On or about March 14, 2005, Plaintiff states that he wrote and hand-delivered a letter to Huml, Rybak and Schlachter's secretary confirming earlier communications where he had informed Defendants that he had been diagnosed with and treated for ADHD. (Pl.'s Dep. at 99-100, 110, 227-229; *see* Ex. B-C, Braud Letter at ECF No. 31-7.)  Plaintiff's letter to Defendants also requested two accommodations: (1) that he be sent reminders of deadlines for critical paperwork or meetings; and (2) that the evaluation process be modified to allow him to be objectively, rather than subjectively, evaluated. (*Id.*)

Plaintiff alleges that on the same day that he made the accommodation request, Defendants advised him that his teaching contract would not be renewed. (Pl.'s Dep. at 227.) The Teaching Evaluation Summary Report prepared by Huml which recommended that Plaintiff's contract should not be renewed  was dated March 3, 2005.  ("March Report," Ex. B-K, ECF No. 31-15.) However, Plaintiff disputes that this is the true date of the decision because the typed date "3/3/05" at the top of the document is crossed off and "3/14/05" is handwritten beside the typed date, and Huml's signature at the bottom of the Evaluation is dated "3/14/05" in handwriting.  (Pl.'s Opp'n at 6; Ex. B-K)  Defendants also produced a letter dated March 3, 2005, written by Huml to Schlacter and Rybak which informs them of Huml's decision not to recommend the renewal of Plaintiff's contract based on Huml's concerns regarding the delivery of Plaintiff's instruction.  ("Nonrenewal letter," Ex. B-J, ECF No. 31-14.)

On April 29, 2005, Plaintiff's contract was not renewed by Defendants' Board of Education. (Braud Dep. at 258-59.)  The Board provided Plaintiff with its reasons for not renewing Plaintiff's contract, stating in relevant part:

> Upon recommendations of your supervisor, principal and superintendent, the Board's decision regarding non-renewal of your limited contract was based on noted deficiencies and/or failure to meet expectations in connection with classroom instructional techniques, processes, materials and methodology including but not limited to deficiencies and/or failure to meet expectations with respect to the following:
>
> • Understanding of how learning takes place and applying that knowledge.
> • Class coordination, accomodating the different levels of learning.
> • Classroom organization and routines.
> • Effective transmission of content.
> • Giving clear, correct and step by step directions to students.
> • Breaking down lesson plans into small parts.
> • Effective demonstrations to the students.
> • Appropriate student practice.
> • Maximizing use of available class time.
> • Preparation of a calendarized scope/sequence.
> • Establishing and providing a basis and routine for structured homework assignments; preparation of an adequate homework guide.
> • Teacher professionalism.
> • Development of support systems and materials to guide and reinforce learning.

(Board Reasons, Ex. B-N, ECF No. 31-18.)  Likewise, Huml stated in his deposition that Plaintiff's "delivery of instruction was not adequate to meet our standard" because it was not organized or sequential in nature.  (Huml Dep. at 126-27.)

Plaintiff does not dispute that Plaintiff's teaching methods were the reason for non-renewal. (Pl.'s Dep. at 229, 235-37, 260-65; Pl.'s Opp'n at 7.)   Rather, Plaintiff states that he is "fully capable of teaching the CAD classes," pointing to the fact that enrollment in his class increased and his students performed well, passing state proficiency tests. (Pl.'s Opp'n at 8.)  Plaintiff also notes that he has received letters of appreciation from students and their parents.  (*Id.*; Pl. Dep. at 240-41.) Plaintiff states that due to his ADHD his "brain does not function" in a structured, linear way . (*See*

-5-

Pl.'s Br. Opp'n at 2.)  As a result, Plaintiff states that "it was not that [I] was not able to transmit content, [I] was not able to transmit it the way Defendants desired [me] to."  (Pl.'s Opp'n at 9; Braud Dep. at 269.)

After the non-renewal of his contract with Defendants, Plaintiff subsequently gained employment teaching Technology Education at Plaquemine High School in Iberville, Louisiana. (Pl.'s Dep. at 46-47. )  Plaintiff has not indicated to his new employer that his ADHD is a disability, and Plaintiff has not requested any accomodation for it.  (*Id.* at 49.)

On or about August 29, 2005, Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"), and on January 31, 2006, the EEOC sent Plaintiff a notice of right to sue. (Pl.'s Compl. ¶ 4.)  Plaintiff filed his Complaint on April 28, 2006.   The parties stipulated to the dismissal of public policy claims and Plaintiff's request for punitive damages.  (ECF No. 8.)  Defendants filed a Motion for Judgment on the Pleadings (ECF No. 6) on June 6, 2006, claiming failure to exhaust administrative remedies. The motion was treated as a summary judgment motion and was denied as to all remaining claims. (ECF No. 34.)

Plaintiff's remaining claims are that Defendants discriminated against Plaintiff in violation of: (a)  the ADA; (b) the Rehabilitation Act; and (c) Ohio Revised Code § 4112.01 *et seq.*  Plaintiff also states that Defendant  retaliated against Plaintiff for requesting reasonable accomodations for his ADHD in violation of: (a)  ADA; (b) the Rehabilitation Act; and (c) Ohio Revised Code § 4112.01 *et seq.*

## II.  LAW AND ANALYSIS

## A. Summary Judgment Motion Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n*, *Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been

-7-

established that create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### B. Discrimination Claims under the ADA, Rehabilitation Act, and Ohio Revised Code § 4112.01[1]

The ADA prevents employers from discriminating against "qualified individuals with disabilities because of the disability of such individuals in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2007).  The ADA provides that a qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).  To recover on a claim of discrimination under the ADA, a plaintiff must show that: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements,

---

[1]     It is undisputed that Defendants  receive federal funding and/or is otherwise governed by the Rehabilitation Act of 1973. Claims of disability discrimination under the ADA, the Rehabilitation Act of 1973, and Ohio law are all subject to the same analysis. *See Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 668 (6th Cir. 2000) (holding that federal case law interpreting and applying Title VII is applicable to cases involving Ohio Revised Code § 4112.01); *see also Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 842 (6th Cir. 1996) (holding that the ADA standards apply in Rehabilitation Act cases alleging employment discrimination). The court's analysis of "the ADA" throughout this section therefore applies to Plaintiff's Rehabilitation Act and Ohio Revised Code § 4112.01 claim.

with or without reasonable accomodation; and 3) he was discharged solely by reason of his handicap." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (2007) (quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (1996). A plaintiff that alleges he was the victim of discriminatory treatment under the ADA may establish unlawful discrimination by introducing direct evidence of discrimination or by introducing indirect evidence of discrimination. Here, Plaintiff does not attempt to establish a direct case of discrimination.

Rather, Plaintiff argues that he can show a prima facie case of indirect discrimination. Discrimination cases based on indirect evidence apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), burden-shifting framework. To recover on a claim of indirect discrimination under the ADA, a plaintiff may establish a prima facie case if he shows that: "(1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accomodation; 3) he suffered an adverse employment decision; 4) his employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applications or the disabled person was replaced." *Macy*, 484 F.3d at 365 (quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d at 1186. The *Macy* court noted that "we have reaffirmed that *Monette* requires a plaintiff demonstrate that 'disability was the sole reason for the adverse employment action.'" *Macy*, 484 F.3d at 364 n.2 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444,454 (6th Cir.), *cert denied*, 543 U.S. 817 (2004). A plaintiff must introduce evidence supporting each element of the prima facie case if the action is to survive summary judgment. *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 386, 842 (6th Cir. 1996). Defendant argues that Plaintiff cannot establish a prima face case because Plaintiff is not disabled under the Act and he is not otherwise qualified for the positions.

Defendants do not dispute that Plaintiff suffered an adverse employment decision, that Defendants knew of Plaintiff's disability, or that Plaintiff was replaced.

If the plaintiff establishes a prima facie discrimination case, the burden shifts to the defendant to rebut the presumption of discrimination by offering a legitimate reason for its action that is unrelated to the employee's disability. *Monette*, 90 F.3d at 1185. The *Monette* court emphasized that if a plaintiff is unable to establish a prima facie claim, the burden "never shifts to the defendant." *Id.* If a defendant can satisfy its burden, the plaintiff bears the burden of establishing that the defendant's proffered reason is a pretext for unlawful discrimination. *Id.* at 1185-86. The plaintiff may show the defendant's reasons are pretext by demonstrating that these reasons: (1) had no basis in fact; (2) did not actually motivate the decision; or (3) was insufficient to warrant the action taken. *Macy,* 484 F.3d at 366 (citing *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

### 1. Prima facie case.

For the foregoing reasons, the court concludes that Plaintiff, the non-moving party, fails to make a prima facie ADA claim because, even construing the evidence in the light most favorable to Plaintiff, no genuine issue of material fact exists that Plaintiff is not disabled under the ADA. As Plaintiff cannot make a prima facie claim, the burden does not shift to Defendant to articulate a legitimate, nondiscriminatory reason for its decision not to renew Plaintiff's contract. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA, Rehabilitation Act, and Ohio discrimination claims as a matter of law.

*a. Disabled.*

-10-

An employee is considered to be "disabled" if he has a: 1) physical or mental impairment that substantially limits one or more major life activities; 2) record of such impairment; or 3) is regarded as having such an impairment.  § 12102(2); *see also Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996).  Plaintiff does not state that he has a record of such impairment.  Since, as discussed below, there is no genuine issue that Plaintiff's ADHD does not substantially limit one or more major life activities, and Defendant did not regard Plaintiff as having such an impairment, Plaintiff fails to establish that he is disabled.

*i.  Impairment that Substantially Limits One or More Major Life Activities.*

For the purposes of the ADA, "major life activities" mean functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2)i), 45 C.F.R. § 84.3(j)(2)(ii).   The Supreme Court has further interpreted the phrase "substantially limits" as requiring a showing of a "considerable" limitation or one that limits a major life activity "to a large degree."  *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999).   The Court has noted that the terms "substantially limits" and "major life activities" need to be "interpreted strictly to create a demanding stand for qualifying as disabled." *Toyota Motor Mfg.*, 534 U.S. at 197. The Sixth Circuit in *Gonzales v. Nat'l Board of Med. Examiners,* 225 F.3d 620, 631 (6th Cir. 2000) noted that "even the EEOC  has reservations about including working as a major life activity and 'has suggested that working be viewed as a residual life activity, considered, as a last resort, 'only if an individual is not substantially limited with respect to any other major life activity.'" (quoting *Sutton,* 527 U.S. at 489, which quotes 29 C.F.R. pt. 1630).  Moreover, the Supreme Court has held that "to be substantially limited in the major life activity of working, one must be precluded from more than one type of job, a specialized job, or a

particular job of choice.  Similarly, if a host of different jobs are available, one is not precluded from a broad range of jobs."  *Id.* at 492; *see also Toyota Motor* (stating that "disabled" means the plaintiff "is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job.")

Courts have viewed with skepticism the claims of plaintiffs that have been diagnosed with ADHD who claim to be disabled.  *See, e.g., Gonzales*, 225 F.3d at 629-632 (affirming the granting of summary judgment and holding that the plaintiff student with ADHD did not meet his burden of showing he was disabled because, compared to most people, he was not substantially limited in the major life activities of reading, writing, and working ); *Whitlock v. Mac-Gray, Inc.,* 345 F.3d 44 (1st Cir. 2003) (affirming granting summary judgment to the employer and holding that the plaintiff failed to proffer evidence that his ADHD was a disability; it did not substantially limit his ability to work because he could perform a class or broad range of comparable jobs); *Calef v. Gillette Co.,* 322 F.3d 75, 83-85 (1st Cir. 2003) (affirming granting summary judgment to the employer and holding that plaintiff with ADHD did not meet his burden of showing he was disabled because his impairment did not substantially limit one or more major life activities); *Wright v. CompUSA,* 352 F.3d 472 , 475-76 (1st Cir. 2003) (granting the employer summary judgment and holding that, while employee submitted evidence that his ADD affected various activities, that evidence did not allow a reasonable juror to conclude that he was substantially limited in major life activities, and therefore the plaintiff was not disabled for the purposes of the ADA); *Felten v. Eyemart Express,* 241 F. Supp. 2d 935, 937-40 (E.D. Wis. 2003) (granting the employer summary judgment because the ADD plaintiff failed to show that he was substantially limited in any

-12-

particular major life activity and failed to show an inability to perform a class or broad range of jobs as he obtained the same job with a different employer).

Moreover, "a diagnosis alone does not establish a disability within the meaning of the ADA," *see Whitlock*, 345 F.3d at 46 (citing *Toyota Motor,* 434 U.S. at 198), and "merely pointing to a diagnosis of ADHD is inadequate." *Calef v. Gillette Co.,* 322 F.3d 75, 86 (1st Cir. 2003). Rather, the ADA requires claimants to "prove a disability by offering evidence of the limitation caused by their impairment in terms of their own experience is substantial." *Toyota Motor*, 534 U.S. at 198.

Significantly, the Sixth Circuit also found in *Gonzales,* 225 F.3d at 629 (quoting 42 U.S.C. § 12101), that the ADHD plaintiff who claimed to be disabled under the ADA did not "fit within Congress's vision of the disabled population." The *Gonzales* court stated that Congress sought to protect isolated, segregated individuals who often have "no legal recourse to redress ... discrimination," and those who "as a group occupy an inferior status in our society and are severely disadvantaged socially, vocationally, economically, and educationally."

Here, Plaintiff states that he is disabled because he has ADHD, which Plaintiff contends is a mental impairment that substantially limits one or more of his major life activities. Plaintiff produces the short affidavit of Dr. Feldman to support his statement. In his affidavit, Dr. Feldman states that he "diagnosed [Plaintiff] with ADHD on or about April 7, 2004." (Feldman Aff. ¶ 4.) Dr. Feldman also states that "[Plaintiff's] ADHD symptoms included excess level of activity and behavior problems in childhood, distractability, impatience, not finishing tasks and resultant problems with disorganization." (*Id.* ¶ 5.)

-13-

Plaintiff also states that ADHD is a mental impairment that "substantially impairs the following major life activities: forgetfulness (Pl.'s Dep. at 16-17); memory loss (Pl.'s Dep. at 24, 144); "bouncing off the walls" and an inability to sit still; (Pl.'s Dep. at 82-84); forgetting where he placed his keys and wallet, to take medication, to pick up his daughter from school, brushing his teeth, washing his hair, paying bills, long-term learning (Pl.'s. Dep. at 83-84; 223); organization (Pl.'s Dep. 90-93); zero recall memory (Pl.'s Dep. at 137); attention to detail and reading. (Pl.'s Dep. at 142.)

Plaintiff also states that his ADHD substantially limits his ability to work because "Defendants wanted Plaintiff to teach in a very structured, organized manner - something that, due to his ADHD, he could not do." (Pl.'s Opp'n at 4.) Plaintiff concedes that "it is not disputed that Plaintiff's teaching methods were the reason for his non-renewal." (*Id.* at 7.) Plaintiff states in his deposition that he was a highly qualified teacher, pointing to various measures of success, such as letters of appreciation from students, parents of students, and successful scores of students' tests. (Pl's Opp'n, citing to Braud Dep. at 240-241.) In his opposition, Plaintiff notes that ADHD "didn't affect what I did at my job. It affected how I did my job." (Pl.'s Opp'n, citing Pl.'s Dep. at 88.)

In its summary judgment motion, Defendants state that Plaintiff's ADHD does not substantially limit him in any major life activity. Defendants base this conclusion on Plaintiff's deposition testimony that Plaintiff can care for himself, his family, and is not in any way physically limited by his ADHD. (Mot. for Summ. J. at 10, citing Pl.'s Dep. at 15, 84.) Defendants point out that Dr. Feldman does not opine in his affidavit that any of the symptoms that Dr. Feldman cites (distractability, impatience, not finishing tasks and resultant problems with disorganization) substantially limit Plaintiff in any major life activities, "such as caring for oneself, performing

-14-

manual tasks, walking, seeing, hearing speaking, breathing, learning, and working." (Def.'s Reply

at 2, ECF No. 38.) Moreover, Defendant notes that Plaintiff admits in his Brief in Opposition that

he graduated college *cum laude*.

Defendants also state that Plaintiff's ADHD does not limit him in his ability to work a broad

range of jobs. Defendants quote Plaintiff's deposition testimony to support its statement:

> Q: Now do you claim that your ADHD prevents you or in some way substantially limits
> you in your ability to work?
>
> [Plaintiff's counsel]: Presently or?
>
> [Defendant's counsel]: In the past or presently.
>
> A: No, no.
>
> Q: Has there ever been a job that you could not perform because you're ADHD?
>
> A: A task or a job, a profession?
>
> Q: Any type of job that you've been on.
>
> A: No.

(Pl.'s Dep. at 86-87.) Defendants note that Plaintiff admits in his Brief in Opposition and in his

deposition that he was promoted to sergeant in the U.S. Marine Corp and was responsible for

following complicated procedures and instructions while maintaining military helicopters. (Defs.'

Mot. at 11, citing Pl.'s Dep. at 94-96.) Defendants state that "at most Plaintiff claims that as a result

of his ADHD, he had difficulty following the step-by-step teaching instructions provided by Huml."

(*Id.* at 49-50).

The court finds that, even construing the evidence in the light most favorable to Plaintiff,

there is no genuine issue that Plaintiff's ADHD does not substantially limit one or more major life

-15-

activity as a matter of law.   It is undisputed that Plaintiff is not substantially limited in his ability to walk, hear, speak, or breathe.   Moreover, the record shows that Plaintiff is not substantially limited in his ability to  perform manual tasks or care for himself.  For example, Plaintiff does not state that he needs assistance in showering or bathing; rather, he states in his deposition that: "[w]hen I take a shower, if I don't wash my hair, brush my teeth, and then soap up, I forget one of them.  I get out without brushing my teeth and I'm like, oh man, things like that affect me every day." (Pl.'s Dep. at 84.)  Additionally, Plaintiff's forgetfulness regarding where he placed his keys and wallet, taking medication, and picking up his daughter from school also do not rise to the level of substantially limiting a major life activity. The *Felten* court held on similar facts involving an ADD plaintiff that the plaintiff had not established that he was substantially limited in a major life activity, noting that:

> Felten's examples of the effects of his ADD - leaving the hose on, forgetting to pick up his children from school, for example - are not themselves major life activities.  And he fails to present any evidence showing that intermittent difficulties with memory, decision-making, impulsiveness, and forgetfulness impact a major life activity or are themselves major life activities, i.e., basic, central functions of life.  *Cf., e.g., Pack v. Kmart Corp.*, 166 F.3d 1300, 1305-06 (10th Cir. 1999) (holding that concentration is not a life activity).

*Felten*, 241 F. Supp. 2d at 942, *accord Toyota Motor*, 534 U.S. at 202 (holding that a plaintiff who needed occasional help dressing and driving did not state facts that "amount to such severe restrictions in the activities that are of central importance to most people daily lives that they establish a manual task disability as a matter of law.")  Like the plaintiff in *Felten,* Plaintiff here does not show "how these symptoms so exceeded the experience of the general population such that a jury could find them substantially limiting.  *Felten,* 241 F. Supp. at 943.  After all, symptoms like forgetfulness and being easily distracted are "commonplace for the average person; if they

-16-

constituted disabilities, the ADA would have to be interpreted broadly, not strictly as the Supreme Court now requires." *Id.*

Plaintiff's ADHD also does not substantially limit his ability to learn or read as a matter of law. Courts have held that plaintiffs with ADHD who have been academically successful, or even marginally academically accomplished, cannot show that ADHD has substantially limited their ability to read or learn, especially where there have been no accomodations. *See, e.g., Krolik v. Nat'l Bd. Of Med. Examiners*, No. CV-05-0315, 2006 U.S. Dist. LEXIS 44561 at *6 (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (2005) and holding that "[a]cademic success is 'directly inconsistent' with a claim that one is substantially limited in learning, especially where there have been no accomodations"); *see also Calef*, 322 F.3d at 84 (holding that ADHD plaintiff employee's high school GED, other college courses, and on-the-job training showed his ability to learn was not substantially impaired); *Steere*, 439 F. Supp. at 24-25 (holding that ADHD medical student plaintiff's earlier academic success, despite his current academic struggles in medical school, showed his ability to learn was not substantially impaired).

Here, Plaintiff achieved academic success as evidenced by the fact that he earned a bachelor's degree *cum laude* (Pl.'s resume, ECF No. 31-6) and obviously did not receive any accomodation for his ADHD since it was not diagnosed until April 2004. Plaintiff's other qualifications that demonstrate his ADHD did not substantially limit his ability to read or learn include: 1) passing both Praxis II and III; 2) obtaining a five-year teaching license in Vocational Drafting occupations with the credentials necessary to obtain a Technology Education license; 3) possessing outstanding knowledge of both architectural and mechanical drafting; 4) acquiring a firm understanding and training in both manual drafting and Computer Aided Design skills; 5) being

-17-

skilled in the use of multiple computer programs related to the manufacturing, architectural, and graphic design industries, including, but not limited to: Auto CAD 2005, AutoDesk's Inventor 8.0, Architectural Desktop 2005, Revit 7.0, Vizx2005, 3D Studio Max 4, Word 2003, Excel 2003, Power Point 2003, Front Page, Director 8.0, and Photoshop CS.  (*Id.*)   Plaintiff does not provide any evidence beyond his own conclusory statement in his Opposition brief that his ability to read and learn is substantially limited by his ADHD.  Accordingly, Plaintiff cannot establish that his ADHD substantially impacts his ability to read or learn as a matter of law.

Finally, Plaintiff's ADHD does not substantially limit his ability to work as a matter of law.  As stated previously, for the purposes of establishing that Plaintiff's ADHD substantially limits the major life activity of work, Plaintiff must show that his impairment precludes him "from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492 (holding the disqualification of the plaintiffs from the single job of global airline pilot did not mean they were substantially limited in the major life activity of working); *see also* 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.")

Various courts have held that ADHD did not substantially limit plaintiff employees in the major life activity of work when plaintiffs could perform other jobs in the same or different class but could not meet the demands of one particular job.  *See, e.g., Krolik v. Nat'l Bd. of Med. Examiners,* No. 2006 U.S. Dist. LEXIS 44561 *5 (D. Ariz. June 27, 2006) (holding that, even though plaintiff medical student could not practice medicine because he failed to pass the national licensing examination and even though ADHD may have contributed to his failure, plaintiff did not show that ADHD affected the major life area of work because he had a successful work history for

-18-

over thirty years as a business owner and, since graduating from medical school, was working as a pharmacist).  Significantly, the *Felten* court held that the ADD plaintiff employee, an optical store manager who was fired for a "disorganized" store that plaintiff claimed was a result of his ADD, was not substantially limited in his ability to work.  *Felten,* 241 F. Supp. 2d at 942.  The court based this conclusion on the fact that the plaintiff did not provide any evidence that he was barred from a broad class of jobs.  *Id.*  Moreover, the *Felten* plaintiff was not even barred from the class of job (optical store management) from which he was fired, based on the fact that he found another job managing an optical store.  *Id.*

Here, Plaintiff does not state that he is unable to work as a teacher or in any other profession.  Rather, he states that he is a highly qualified teacher, but he was fired because he could not teach the way Defendants wanted him to teach as a result of his ADHD.   (Pl.'s Opp'n at 9.)  Like the *Felten* plaintiff, Plaintiff has not provided any evidence that he is now or has ever been barred from a broad class of jobs.  Indeed, like the *Felten* plaintiff, it is undisputed that Plaintiff is currently employed as a teacher, the same class of job that he held at CVCC.  Accordingly,  there is no genuine issue that Plaintiff has failed to show that his ADHD substantially limits him in the major life area of work or in any other major life activity.

### ii.  Regarded as Having an Impairment.

A person is also considered disabled for the purposes of the ADA if he falls within the category of those "regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(3).  To meet this definition, a plaintiff must show that: 1) the employer believes that the person has an impairment that substantially limits a major life activity but the person does not have such an impairment; or

-19-

2) the employer believes that an impairment the person does have is substantially limiting for a major life activity when in fact it is not so limiting. *Sutton,* 427 U.S. at 489.  Thus, the definitions of "substantially limits" and "major life activity" discussed above still apply. *Felten,* 241 F. Supp. at 944.

  To support his claim that Defendants regarded him as disabled, Plaintiff conclusorily states that:

> Defendants clearly formed stereotypical assumptions about Plaintiff's ability to teach and to perform his job on the basis of his ADHD condition.  Moreover, Defendants told Plaintiff that he would fit in somewhere else, just not with Defendants .... Clearly a reasonable juror could find that Defendants perceived Plaintiff as suffering from an impairment that limited one or more major life functions."  (Pl.'s Opp'n at 19.)

  Plaintiff claim that Defendants regarded him as disabled is strikingly similar to the ADD plaintiff employee's claim in *Davidson*, 133 F.3d 499, 510-511 (7th Cir. 1998).  The therapist plaintiff in *Davidson* claimed that "[s]imply put, [defendants] regarded [plaintiff] as unable to work, and treated her adversely because of it."  *Id.*  The court found that the defendant did conclude that ADD rendered the plaintiff unable to fulfill her responsibilities as a psychotherapist at the defendant' clinic, just as Defendants here may have concluded that ADHD rendered Plaintiff unable to fulfill his responsibilities as a teacher at CVCC.  The plaintiff in *Davidson* was repeatedly criticized by her employer for  tardy dictation, which she attributed to her ADD, 133 F.3d at 510, just as Plaintiff was repeatedly criticized here by Defendants for his inability to deliver classroom instruction in an organized, linear way, which he attributed to his ADHD.  The court's analysis of the *Davidson* plaintiff's claim that the defendant "regarded her" as disabled is therefore instructive:

Defendant may have concluded that plaintiff would never be able to complete her notes with the timeliness that defendants demanded.  But even if defendants perceived this and any other shortcoming to be an impairment, nothing in the record suggests that [defendant] perceived the impairment as limiting her ability to work generally.  As we have discussed, section 12102(2)(1) looks for proof beyond the plaintiff's inability to satisfy the expectations of a single employer; to be "substantial," a limitation on the ability to work must be one that affects the plaintiff's ability to perform a class or range of jobs before it qualifies as a disabling limitation under the ADA.  For purposes of section 12102(C), the employer's perception of the plaintiff's inability to work must have a comparable breadth.  29 C.F.R. § 1630.2 (remaining citations omitted).  A perception that ADD rendered [plaintiff] unfit to work as a psychotherapist, for example, might bring her within the scope of 12102(2)(C).  So far as the record informs us, that was not [defendant's] perception; the most that one can infer from the record is that [defendant] considered her unable to perform one job for one employer.

*Id.* at 510-11.

Viewing the evidence in the light most favorable to Plaintiff, Defendants here, similar to the defendants in *Davidson*, may have concluded that Plaintiff's ADHD would prevent him from teaching in the linear, organized way that Defendants demanded.  Yet even if Defendants perceived Plaintiff's lack of organization to be an impairment, Plaintiff fails to present any evidence that Defendants perceived Plaintiff's impairment as limiting his ability to work generally.  In fact, Huml's statement that "he would fit in somewhere else, but not here," demonstrates that Defendants did not perceive that ADHD limited him from working as a teacher.  Accordingly, Plaintiff fails to establish that Defendants regarded him as having an impairment that substantially limits one or more of Plaintiff's major  life activities.

### iii.  Record of impairment.

Plaintiff does not state that he has a record of impairment.  (*See* Pl.'s Opp'n at 18-19.) Since there is no genuine issue that Plaintiff is not disabled under the ADA because he is not substantially limited in any major life activity and Defendants did not regard Plaintiff as having an impairment that substantially limits one or more major life activities, Plaintiff

-21-

therefore fails to make a prima facie case under the ADA.  Additionally, as discussed previously, claims of disability discrimination under the ADA, the Rehabilitation Act of 1973, and Ohio Revised Code § 4112.01 are all subject to the same analysis.  Accordingly, since Plaintiff cannot establish a genuine issue of material fact that he is disabled under the ADA, the Rehabilitation Act of 1973, and Ohio Revised Code § 4112.01, Defendants are entitled to summary judgment on Plaintiff's discrimination claims as a matter of law.

### C.  Retaliation Act Claims Under the ADA, Rehabilitation Act, and Ohio Revised Code § 4112.01.[2]

Plaintiff states that Defendants retaliated against him for requesting reasonable accomodations for his ADHD.  (Pl.'s Opp'n at 12-18.)  A plaintiff need not be a qualified individual with a disability to pursue a retaliation claim.  *See Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 188 (3d Cir. 2003); *Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1264 (10th Cir. 2001).  As discussed previously, Plaintiff is not a qualified person with a disability under the ADA, the Rehabilitation Act, or Ohio Revised Code § 4112.01.

### 1. Prima facie case.

To establish a prima facie retaliation claim, Plaintiff must show that: 1) he engaged in a protected activity; 2) Defendants had knowledge of Plaintiff's exercise of his protected activity; 3) Defendants thereafter took an employment action adverse to Plaintiff; and 4) a causal connection exists between the protected activity and the adverse employment action. *DiCarlo v. Potter, Postmaster General,* 358 F.3d 408 (6th Cir. 2004).  Requesting an accomodation is a protected activity.  *Wright v. CompUSA, Inc.,* 352 F.3d 472, 477-78 (1st Cir.

---

[2]     As noted previously, the court's analysis of Plaintiff's ADA, Rehabilitation Act and Ohio Revised Code § 4112.01 claims are the same.

2003); *Kovac v. Lowes Home Centers, Inc.*, No. 4:05CV2276, 2006 U.S. Dist. LEXIS 37214, at *20 (N.D. Ohio June 7, 2006) (stating that "plaintiff engaged in protected activity by requesting accomodations"...). Once a prima facie case is established, the burden of producing some non-discriminatory reason falls upon the defendant. *DiCarlo*, 358 F.3d at 420. If the defendant demonstrates such reason, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation. *Id.*

It is uncontested that Plaintiff engaged in a protected activity by requesting accomodations for his ADHD, and that Defendants knew that Plaintiff requested accomodations. However, the parties dispute whether Defendants took an employment action adverse to Plaintiff *after* Plaintiff requested the accomodation and whether a causal connection exists between the accomodation request and the nonrenewal of Plaintiff's contract. After construing the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff can establish a prima facie case of retaliation for the foregoing reasons.

Plaintiff states that at 8:00 a.m. on March 14, 2005, Plaintiff hand-delivered a written diagnosis of his ADHD and request for accomodation to Rybak, Huml, and Schlacter's secretary. (Pl.'s Opp'n at 5, citing Pl.'s Dep. at 99-100, 227-229; Rybak Dep. at 46-48.) In this letter, Plaintiff requested the following accomodations: 1) that he be sent reminders of deadlines for critical paperwork or meetings; and 2) that the evaluation process be modified to allow him to be objectively, rather than subjectively, evaluated. (Ex. B-C, Braud Letter, ECF No. 31-7.) It is undisputed that March 14, 2005, was the first time Plaintiff requested accomodations for his ADHD. (Pl.'s Dep. At 233.) It is also undisputed that at 11:00 a.m. that same morning, Huml called Plaintiff into Huml's office and notified Plaintiff that Huml was

-23-

going to recommend the non-renewal of Plaintiff's contract to the school board. (*Id.*) Plaintiff states that this was his first notice of a recommendation of non-renewal. Plaintiff never saw Huml's letter dated March 3, 2005 to Schlacter and Rybak recommending that Plaintiff's contract not be renewed based on Huml's concerns regarding Plaintiff's delivery of instruction. (Nonrenewal letter, Ex. B-J.) Plaintiff disputes that the Evaluation Summary Report (Ex. B-K) prepared by Huml and dated March 3, 2005 was actually prepared on March 3, 2005 for the following reasons:

> First, Defendants have not set forth any evidentiary support as to when it was actually prepared. Second, [the Evaluation Summary Report] is the formal "no recommended" recommendation - but the date of March 3, 2005 is crossed out and March 14, 2005 is written in its place. Third, as shown above, Plaintiff was not told of or shown this prior to March 14, 2005. Fourth, and most importantly, as shown above, Rybak informed Plaintiff three days earlier that a recommendation *was not yet decided* and that it would be up to Huml to yet decide Plaintiff's recommendation. Exhibit J [Huml's Mach 3 letter memorializing his recommendation not to renew Plaintiff's contract] was addressed to Rybak, so he certainly would have known by March 11, 2005, if such a nonrenewal recommendation decision or notice had in fact been made prior to that time.

(Pl.'s Opp'n at 6, emphasis added.)

Defendants, however, contend that Huml made his decision to recommend the non-renewal of Plaintiff's contract on March 3, 2005, before Plaintiff requested accomodations for his ADHD, and memorialized this decision in the letter to Schlacter and Rybak. (Ex. B-J.) Huml explains the discrepancy between the typed date of March 3, 2005, and the handwritten date of March 14, 2005 on the Evaluation Summary Report (Ex. B-K) by stating that March 14, 2005 was the date that Plaintiff was notified of Huml's recommendation not to renew Plaintiff's contract. (Huml Dep. at 179). Defendants also points out that, in Plaintiff's

deposition testimony, Plaintiff states that Rybak told Plaintiff on March 11, 2005 that, in response to Plaintiff's question regarding whether he was going to be recommended for renewal of his contract, Rybak "said at this time, *I don't know, it's up to Frank.*"  (Def.'s Reply, Braud Dep. at 233-34, emphasis added.)

The court finds there is a genuine issue of material fact regarding  the date of the non-renewal decision.  The court notes that Plaintiff's statement that Rybak claimed renewal "was not yet decided" is contradicted by Plaintiff's deposition testimony that Rybak stated, "I don't know, it's up to Frank."  However, Plaintiff and Defendants have conflicting explanations for the handwritten date of "3/14/05" on the Evaluation Summary Report dated March 3, 2005. Since the court must construe this conflicting evidence in the light most favorable to Plaintiff, the court finds that the non-renewal date was March 14, 2005, three hours after Plaintiff made his accomodation request.

Next, Plaintiff asserts that temporal proximity alone is indirect evidence sufficient to establish a causal connection between Plaintiff's accomodation request and Defendants' decision not to renew Plaintiff's contract.  (Pl.'s Opp'n at 12-15, citing *DiCarlo,* 358 F.3d at 408 (citing *Nguyen v. City of Cleveland,* 229 F.3d 559, 566-67 (6th Cir. 2000).  However, Plaintiff does not set forth any other evidence to show this causal connection. Rather, he states in a circular, conclusory fashion that, since Plaintiff's contract was not renewed after his accomodation request, he suffered disparate treatment, and this disparate treatment is further evidence of retaliation.  (Pl.'s Opp'n at 15.)  In response, Defendants state that there is no causal connection between Plaintiff's accomodation request and Huml's decision to recommend nonrenewal based on the extensive evidence documenting several years of

-25-

evaluations indicating that Plaintiff needed to improve his delivery of instruction or his contract would not be renewed.

The court finds that, even in the absence of other evidence of a causal connection between Plaintiff's accomdoation request and the non-renewal of his contract, three hours is sufficient temporal proximity to justify an inference of retaliation. Generally, the Sixth Circuit holds that a plaintiff may not present a prima facie retaliation case based solely on temporal proximity. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 566-67 (6th Cir. 2000) (citing *Cooper v. City of North Olmsted,* 795 F. 2d 1265 (6th Cir. 1986) and *Parnell v. West*, 1997 U.S. App. LEXIS 12023, *2 (6th Cir. 1997) to hold that the plaintiff failed to establish a prima facie retaliation case because temporal proximity, a period of several months, did not support an inference of retaliatory discrimination when the plaintiff's retaliation case was otherwise weak and there was substantial evidence supporting defendant's version of the events). However, an exception to this general rule exists where the temporal proximity between the protected activity and the adverse employment action is "acutely near in time," and in such cases that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. *See DiCarlo*, 358 F.3d at 421 (holding that twenty-one days between plaintiff filing his EEOC complaint and the employer terminating him was sufficient temporal proximity to show a causal connection so as to create an inference of retaliatory motive.) Here, the three hour temporal proximity between Plaintiff's accomodation request and Defendants' recommendation not to renew Plaintiff's contract is "acutely near in time" since it is less than the twenty-one days described in *DiCarlo*. Therefore, the court finds that this evidence alone is sufficient to show a causal connection so as to create an inference of

retaliatory motive.  Accordingly, there is no genuine issue of material fact that Plaintiff can establish a prima facie case of retaliation.

### 2.  Nondiscriminatory Reason

Since the court has found that Plaintiff makes a prima facie case of retaliation, the burden of producing some non-disciminatory reason for Defendants' decision not to renew Plaintiff's contract falls upon Defendants.  *See DiCarlo*, 358 F.3d at 420.

Defendants state that its concern with Plaintiff's delivery of instruction was a legitimate, nondiscriminatory reason for its decision not to renew Plaintiff's contract. Defendants point to significant evidence in the record demonstrating that the decision not to renew Plaintiff's contract on this basis was a lengthy, involved process, constituting multiple evaluations and meetings with Plaintiff over a period of about a year and a half.  For example, Huml put Plaintiff on notice on December 4, 2003, over a year before Plaintiff told Defendants of his ADHD diagnosis, that Plaintiff needed to devote considerable time to planning and delivering instruction in an organized manner, and Plaintiff needed to eliminate tangential conversation and scattered explanations.  (Ex. B-E, Evaluation Dec. 2003.)  Huml subsequently told Plaintiff on February 27, 2004, that he was recommending Plaintiff's contract renewal with reservations because of Huml's continued concern regarding Plaintiff's instructional planning, delivery techniques, presentation skills, and sequencing of explanations.  (Ex. B-F, Evaluation Feb. 2004.)  Huml also stated that if Plaintiff did not improve in his instructional delivery, his contract may not be renewed the following year.  (*Id.*; Huml Dep. at 185.)  Huml later evaluated Plaintiff on November 5, 2004 and January 31,

2005, and each time told Plaintiff that he still needed to improve his classroom instruction. (Evaluation Nov. 2004; Evaluation Jan. 2004.)

Based on the foregoing evidence, the court finds that Defendant has met is burden to show that the decision not to renew Plaintiff's contract was based on legitimate, nondiscriminatory reasons, i.e., Defendants concerns with Plaintiffs delivery of instruction. Defendants offer compelling evidence that Defendants repeatedly reminded Plaintiff for over a year that Plaintiff needed to address the problems in his classroom instruction.  Moreover, the record is clear that Defendants communicated this concern to Plaintiff on numerous occasions, and Plaintiff knew that the consequences of Plaintiff's failure to improve would be that Plaintiff's contract would not be renewed.  Finally, the record is clear that Plaintiff failed to improve.  Accordingly, there is no genuine issue of material fact court that Defendants meet its burden of establishing a legitimate, nondiscriminatory reason for Defendants' decision not to renew Plaintiff's contract.

### 3. Pretext

Since Defendants have shown a legitimate, nondiscriminatory reason for its decision not to renew Plaintiff's contract, the burden shifts to Plaintiff to demonstrate that Defendants reasons are pretext for retaliation.  *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  To satisfy this burden, Plaintiff must show by a preponderance of the evidence either that: 1) the proffered reasons had no basis in fact; 2) the proffered reasons did not actually motivate Defendants' decision not to renew Plaintiff's contract; or 3) that these reasons were insufficient to motivate discharge.  *Id.*

Here, Plaintiff does not attempt to show pretext based on the first or second method. (Pl.'s Opp'n at 17.)  Indeed, as previously discussed, Plaintiff has already acknowledged that he does not dispute that his teaching methods were the basis for the non-renewal of his contract, and Plaintiff also does not dispute that these reasons motivated Defendants' decision not to renew Plaintiff's contract.  Rather, Plaintiff argues that he can establish pretext based on the third test, i.e., Plaintiff states that he can show that the reasons stated by Defendants were insufficient to motivate the non-renewal of Plaintiff's contract.  Therefore, Plaintiff must show "circumstances which tend to prove that an illegal motivation was *more* likely than that offered by [Defendants]." *Manzer*, 29 F.3d at 1084 (emphasis in original).  Plaintiff argues that he can  establish pretext because:

> prior to Plaintiff's request for an accomodation, he was not advised of any non-renewal recommendation, but told the prior business day such a decision *had not yet been made*.  Three hours after he made a request for an accomodation, he was told of Defendants' recommendation for non-renewal.  This before and after treatment of Plaintiff is precisely the type of evidence the court in *Cantrell v. Nissan North America,* 145 Fed. Appx. 99 (6ᵗʰ Cir. 2005) found constitutes evidence of pretext to support a retaliation claim.

(Pl.'s Opp'n at 18.)

Plaintiff's argument that he, like the plaintiff in *Cantrell,* can fulfill his burden of establishing pretext based on the "before and after treatment of Plaintiff" is not well-taken. First, as discussed previously, Plaintiff's statement in his Opposition brief that he was definitively told by Rybak that a decision regarding a renewal recommendation had not yet been made is directly contradicted by Plaintiff's deposition, where Plaintiff stated that Rybak told Plaintiff that Rybak did not know if a renewal decision had been made, and that it was up to Huml.  (Pl.'s Dep. at 234.)

-29-

Second, the facts of *Cantrell* are distinguishable from Plaintiff's case.  As the *Cantrell* court noted, the "defendant employer showed remarkable patience for the inappropriate behavior [exhibiting threatening behavior and making sexual overtures] and repeated absences for over ten years, and then fired her abruptly only three weeks following her return to work after she engaged in a protected activity [making an EEOC claim]."  *Id.* at 107-08.   Indeed**,** the *Cantrell* court noted that "[t]he event which precipitated Cantrell's firing [failure to successfully participate in the vehicle evaluation program] pales in comparison to some of the far more egregious behavior that she had previously engaged in, and for which she was not terminated."  *Id.* at 108.

Here, as previously discussed, Defendants have shown that its decision not to renew Plaintiff's contract, unlike the defendant employer's decision in *Cantrell*,  was not abruptly made after he engaged in a protected activity.  Rather, Defendants have shown that Huml repeatedly warned Plaintiff for over a year and a half that if  Plaintiff did not improve his delivery of instruction, then his contract would not be renewed.  Thus, unlike the defendant in *Cantrell*, Defendants here based its decision not to renew Plaintiff's contract upon the same reason that it had repeatedly informed Plaintiff of before he engaged in his protected activity.

Moreover, the Sixth Circuit and other circuits have held that, while close temporal proximity can be sufficient to create an inference of retaliation sufficient to make a prima facie case, it cannot also serve to satisfy the plaintiff's burden to show the defendant's proffered nondiscriminatory reasons for the adverse employment action are pretext in the absence of any other such evidence.  *See, e.g., Michael v. Caterpillar Fin. Servs. Corp.,* No. 06-5750, 2007 U.S. App. LEXIS 18154, at *22-31 (6th Cir. July 31, 2007) (affirming granting of summary

-30-

judgment to the defendant employer on plaintiff's racial retaliation claim where there was two days between the protected activity and adverse employment action, but plaintiff was unable to raise a genuine issue of material fact regarding whether the defendant's proffered legitimate explanation was pretextual); *Joostberns v. United Parcel Servs.,* No. 04-2370, 2006 U.S. App. LEXIS 533, at *21-30 (6th Cir. Jan. 9, 2006) (affirming granting of summary judgment to the defendant employer on plaintiff's FMLA retaliation claim where there was three weeks between the protected activity and adverse employment action, but plaintiff was unable to raise a genuine issue of material fact regarding whether the defendant's proffered legitimate explanation was pretextual); *Woodruff v. Peters*, 482 F.3d 521, 529-32 (D.C. Cir. 2007) (affirming granting of summary judgment to the defendant employer on plaintiff's ADA retaliation claim where there was one month between the protected activity and adverse employment action, but plaintiff was unable to raise any genuine issue of material fact regarding whether the defendant's proffered legitimate explanation was pretextual); *Haulbrook v. Michelin N. Am. Inc.,* 252 F.3d 696 (4th Cir. 2001) (affirming granting of summary judgment to the defendant employer on plaintiff's ADA retaliation claim where there was three weeks between the protected activity and adverse employment action, but the plaintiff was unable to raise any genuine issue of material fact regarding whether the defendant's proffered legitimate explanation was pretextual).

Significantly, the *Woodruff* court noted that:

[i]f temporal proximity sufficed to rebut a legitimate proffer, then protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim. Assuming the intention behind the ADA's retaliation provisions was to protect the remedial scheme but not to create a permanent discipline-free zone for complainants, we conclude positive evidence beyond mere

-31-

proximity is required to defeat the presumption that the proffered explanations are genuine.

*Woodruff,* 482 F.3d at 530.

Here, Plaintiff makes no argument beyond temporal proximity to show that Defendants proffered legitimate reasons for its decision to renew Plaintiff's contract are pretext for retaliation. Therefore, there is no genuine issue of material fact regarding whether Plaintiff's firing was a pretext for discrimination. There is no evidence that it was. Accordingly, Defendants are therefore entitled to judgment on the ADA, Rehabilitation Act, and Ohio Revised Code § 4112.01 retaliation claims as a matter of law.

### III. MOTION TO COMPEL

The court find that Plaintiff's Motion to Compel is moot in light of the court's ruling that Plaintiff fails to make a prima case disability discrimination case in violation of the ADA, Rehabilitation Act, and Ohio Revised Code § 4112.01. Plaintiff's requests for interrogatory responses and document production are directed toward Plaintiff's ability to show that Defendant's legitimate, nondiscriminatory reasons are pretext for discriminating against Plaintiff on the basis of his alleged disability. (*See* Pl.'s Mem. In Support at 4-7.) However, as discussed previously, the burden never shifts to Plaintiff to show pretext on his disability discrimination claims because there is no genuine issue of material fact that Plaintiff cannot show he is disabled, and therefore Plaintiff cannot make a prima facie case of disability discrimination. Accordingly, Plaintiff's Motion to Compel is denied as moot.

### IV. CONCLUSION

For the reasons stated above, the court grants Defendants' Motion for Summary Judgment on all Plaintiff's discrimination and retaliation claims under the ADA, Rehabilitation Act, and Ohio Revised Code § 4112.01 pursuant to Fed. R. Civ. P. 56.  (ECF No. 31.)  The court also denies Plaintiff's Motion to Compel pursuant to Fed. R. Civ. P. 37 as moot. (ECF No. 28.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 25, 2007